IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| M.H. | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | FILE NO.: _____ |
| SHREE SAIBABA, LLC, | : | |
| d/b/a SUPER 8 | : | |
| | : | **JURY TRIAL DEMANDED** |
| Defendant. | : | |

**COMPLAINT**

Matthew B. Stoddard
THE STODDARD FIRM
1534 N Decatur Road
Atlanta, GA 30307
P: 470-467-2200
F: 470-467-1300
matt@legalhelpga.com

**Attorney for Plaintiff**

1

# TABLE OF CONTENTS

Introduction.................................................................................................3

Procedural Issues........................................................................................5

Fifteen-Year-Old M.H. is Trafficked for Sex.............................................7

Defendant Had Extensive Knowledge of Trafficking at Its Hotel.........................14

    A.    The Industry Knowledge...................................................14

    B.    Online Reviews…………………………………………………17

Defendant Had Knowledge That M.H. Was Being Trafficked...............................18

COUNT 1:  TVPRA Civil Beneficiary Claims.........................................21

Causation and Damages.............................................................................25

Conclusion and Prayer for Relief................................................................27

## INTRODUCTION

1.

This case involves the sex trafficking of a minor, M.H., at Defendant's Super 8 in Warner Robins, Georgia, in October 2016, when Plaintiff was a 15-year-old child.

2.

The hotel at issue is the Super 8 located at 105 Wood Crest Boulevard, Warner Robins, Georgia, 31093 (the "Super 8").

3.

At all relevant times, Defendant Shree Saibaba, LLC d/b/a Super 8 ("Shree Saibaba") owned, operated, and managed the Super 8.

4.

The Super 8 is and has been a notorious hotspot for illicit activity that has been attracting sex trafficking and prostitution ventures for years.

5.

M.H. was trafficked at the Super 8 by Demetrius Hunter a/k/a "Red" and Tamara Taylor a/k/a "Coco" in October 2016.

6.

M.H. was only able to escape Defendant's hotel because she was rescued by law enforcement from the Super 8.

7.

Prior to M.H.'s trafficking, Defendant Shree Saibaba was on notice about the prevalence of sex trafficking, prostitution, drug-related crimes, and violent crimes at the Super 8. Such notice came through publicly available information (such as its online reviews) and law enforcement activity at the Super 8.

8.

Despite its knowledge, Defendant Shree Saibaba refused to take any action to deter sex trafficking. Instead of contacting law enforcement, hiring appropriate security, or taking other reasonable measures to deter commercial sex, Defendant chose to profit from the room revenues and to provide cover for traffickers seeking a place operate free of repercussions.

9.

As a direct and foreseeable result of Defendant's actions and inactions, Plaintiff in this case was brought to Defendant's motel to be trafficked, beaten, threatened, and sold for sex.

## THE STATE COURT OF HOUSTON COUNTY COURT MATTER

### 10.

Plaintiff previously filed a lawsuit against this Defendant in the State Court of Houston County on March 11, 2022, with Civil Action File Number 22-V-54036.  A file stamped copy of the Houston County Complaint is attached hereto as Exhibit A.

### 11.

The Houston County matter was dismissed without prejudice on November 29, 2022, and a file stamped copy of that dismissal without prejudice is attached as Exhibit B.

### 12.

While not required in these circumstances[1], out of an abundance of caution, Plaintiff has paid the court costs related to the Houston County matter.  Proof that such costs were paid is attached hereto as Exhibit C.

## PROCEDURAL ISSUES

### 13.

Given the nature of the case, M.H. is identified in this Complaint by her initials to prevent public disclosure of her name. Plaintiff's counsel has either previously disclosed M.H.'s full name to defense counsel or will immediately upon

---

[1] This lawsuit is not a renewal action of Plaintiff's state law claims under O.C.G.A. § 9-2-61.

identification of defense counsel. When filing this Complaint, Plaintiff's counsel also filed a Motion for Protective Order seeking the Court's permission for M.H. to proceed anonymously. Upon information and belief, Defendant will consent to M.H. proceeding without publicly disclosing her name.

14.

Plaintiff M.H. is a resident and citizen of Macon, Georgia, who is subject to the jurisdiction and venue of this Court.

15.

Defendant Shree Saibaba, LLC, is a domestic limited liability company with its principal place of business located at 105 Wood Crest Boulevard, Warner Robins, Georgia, 31093.

16.

Defendant Shree Saibaba, LLC, can be served through its registered agent Samir Cholera who lives at 103 Welney Circle, Warner Robins, Georgia 31088. The registered agent office address is the hotel address 105 Wood Crest Boulevard, Warner Robins, Georgia, 31093.

17.

Defendant Shree Saibaba, LLC, was properly served with process in this matter.

18.

6

Defendant Shree Saibaba, LLC, is subject to the jurisdiction and venue of this Court.

19.

Jurisdiction is proper in this Court under 28 U.S.C. § 1331 (federal question jurisdiction) because this matter concerns the Trafficking Victims Protection Reauthorization Act ("TVPRA"), which is a law of the United States.

20.

Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in Houston County, Georgia, which is within the Middle District of Georgia's Macon Division. *See* 28 U.S.C. § 1391.

## FIFTEEN-YEAR-OLD M.H. IS TRAFFICKED FOR SEX

21.

In October 2016, Plaintiff was sold for sex by two traffickers at Defendant's Super 8 for approximately one week.

22.

During this period, Plaintiff's traffickers, Hunter and Taylor, rented rooms at Defendant's hotel paying in cash for one night at a time, booking the next night's stay before check-out time each morning.

23.

Defendant collected revenue from rental of the rooms at the Super 8 in which M.H. was forced to have sex.

24.

The frequency of the trafficking was such that M.H. was raped at Defendant's hotel by approximately more than thirty-five (35) adult males.

25.

In short, the following happened repeatedly: a buyer came to Defendant's hotel and purchased the "right" to have sex with M.H. from Hunter and/or Taylor then the buyer sexually assaulted M.H. in Defendant's hotel rooms.

26.

Hunter and Taylor would remain near the room to monitor M.H.'s activity, including when she finished with one "John" and began with another.

27.

Hunter and/or Taylor took the commercial sex act proceeds and used a portion of the proceeds from the commercial sex acts to book lodging at the Super 8 for another night.

28.

Upon information and belief, Hunter and/or Taylor would use Defendant's WIFI network to post advertisements for M.H. to perform sex acts, and men would thereafter sexually assault M.H. because of these advertisements.  Upon information and belief, Hunter and/or Taylor paid for use of Defendant's WIFI network either through the room rental fees or a separate charge.

29.

Throughout the period M.H. was sold for sex at the Super 8, she would enter the Super 8 lobby with her traffickers while they purchased the rooms.

30.

 Defendant's staff was familiar with Plaintiff's traffickers because they rented rooms at the hotel before.

31.

9

Defendant's staff would rent rooms to sex traffickers and others engaging in commercial sex or illegal activities and Defendant's staff would assign those engaging in illegal activities rooms on the third floor of the hotel.

32.

The manager of the Super 8 had a practice of trading sex with victims of sex trafficking and on one occasion Plaintiff witnessed this manager on the third floor entering the room another young woman to trade room rentals for sex.

33.

On a separate occasion, M.H. and another young trafficking victim were in the parking lot of Defendant's hotel, being closely monitored by their traffickers, when this same manager of the Super 8 approached the other young trafficking victim and asked if she wanted to stay in her room for free in exchange for sex. After receiving her trafficker's approval, this same hotel manager took the victim inside the hotel and had sex with her.  Nearly 30 minutes later when the young girl returned, she was crying after her sexual encounter with this hotel manager.

34.

10

To control M.H. during the duration of her stay at the Super 8, Hunter and Taylor would threaten M.H. with violence if M.H. did not continue to perform sex work at the Super 8.

35.

While Plaintiff was trafficked at Defendant's hotel, she was beaten by her traffickers and often had bruises that were visible to Defendant's staff.

36.

Defendant had ample opportunity to observe the age and inappropriate appearance of M.H. as she frequently appeared around the Super 8, including common areas and approaches, wearing little clothing and soliciting adult men.

37.

Plaintiff's traffickers routinely denied housekeeping entry to the room where they were trafficking M.H. and instead would request additional towels and tissues.

38.

For the duration of time at Defendant's hotel, Plaintiff or her traffickers would place the trash bin (that was filled with used condoms) outside the room door for housekeeping to dispose of.

39.

Defendant's employees knew or should have known that Plaintiff was being trafficked at the Super 8.

40.

While being trafficked at Defendant's hotel, Plaintiff observed numerous other girls being sold for sex and other traffickers openly operating from the Defendant's hotel.

41.

Defendant's employees, agents, and/or representatives were friendly with various sex traffickers operating at the Super 8, including Plaintiff's sex traffickers.

42.

On information and belief, Defendant's employees, agents, and/or representatives allowed, condoned, assisted, and facilitated Plaintiff's minor sex trafficking at the Super 8 by, among other things, acting as lookouts for Plaintiff's trafficker and informing the trafficker of police activity at the hotel as well as warning Plaintiff's trafficker about guest complaints and/or high visitor traffic drawing unwanted attention.

43.

12

Plaintiff was forced (through coercion, violence, and threats of violence) to have sex with men in exchange for money in the hotel room her traffickers rented from Defendant.

44.

Plaintiff's traffickers took the money from the sex acts and used it to re-rent hotel rooms from Defendant, and then Plaintiff's traffickers again forced (through coercion, violence, and threats of violence) her to have sex with men in exchange for money in the rooms.

45.

Defendant's staff and agents observed the following numerous, well-known, and visible signs of a minor sex trafficking victim that M.H. and her traffickers exhibited:

a. M.H. was very young, only 15-years-old, and the male trafficker, Hunter, was much older (approximately 34) but not old enough to be M.H.'s father;

b. M.H. was malnourished, lacked appropriate hygiene, appeared sleep deprived, and had signs of physical injury, including visible bruising;

c. M.H. was under the influence of drugs and alcohol such that she would sway, stumble, and appear dazed, and/or appear glossy-eyed;

d. M.H. would be wearing provocative or inappropriate clothing for her age while walking around the common areas of the hotel at a time when she should have been in school given her apparent young age;

e.   M.H. appeared under the control of her much older traffickers, she always to kept head and eyes down while in the presence of Defendant's staff rarely making eye contact with said staff;

f.   M.H. stayed quiet and displayed signs of physical abuse (i.e. bruising and avoidance of interaction);

g.   Hunter and/or Taylor rented rooms by the day and would usually pay with cash;

h.   M.H.'s traffickers would routinely deny housekeeping service for days at a time;

i.   M.H. and/or traffickers consistently and excessively requested towels from housekeeping while denying housekeeping access to the room;

j.   There would be a large number of used condoms in the rooms rented by M.H.'s traffickers;

k.   M.H. was often seen on Defendant's property loitering and associating with male patrons who were much older than she was; and

l.   There was heavy foot traffic outside of M.H.'s hotel room with a constant stream of male visitors entering the room one at a time, staying a short period, and then leaving.

46.

Despite observing the above, Defendant, in its quest for profit, repeatedly rented rooms to Plaintiff's trafficker for days at a time – all whilst keeping 15-year-old M.H. on the third floor of the hotel where they lodged the other sex workers.

47.

M.H.'s trafficking continued until she was rescued by police at the Super 8. M.H.'s traffickers were later arrested and convicted of sex trafficking her in 2021.

14

48.

During all relevant time periods, Defendant owned, operated and managed the Super 8 hotel located at 105 Wood Crest Boulevard, Warner Robins, Georgia.

## DEFENDANT HAD EXTENSIVE KNOWLEDGE OF TRAFFICKING AT ITS HOTEL

### A.    The Industry Knowledge

49.

Defendant knew or should have known of the existence of sex trafficking and its illegality since the passage of the Trafficking Victims Protection Act in 2000, and the United Nations' Palermo Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children also in 2000, and the passage of O.C.G.A. § 16-5-46 in 2007.

50.

Defendant knew or should have known that, in 2013, the acting Attorney General Sam Olens announced a statewide campaign, "Georgia's Not Buying It," to combat child sex trafficking. As part of the campaign, AG Olens' office "collaborated with partners to conduct trainings and increase awareness," which included "multiple trainings for the hotel industry."[2]

---

[2] *See* https://law.georgia.gov/press-releases/2013-03-18/attorney-general-olens-law-enforcement-announce-campaign-fight-sex (last visited Sept. 12, 2025).

51.

Defendant knew or should have known that the Georgia legislature passed O.C.G.A. § 16-5-47 in 2013, which required hotels to post sex trafficking notices "in each public restroom for the business or establishment and either in a conspicuous place near the public entrance of the business or establishment or in another conspicuous location in clear view of the public and employees where similar notices are customarily posted…"

52.

Defendant knew or should have known that, compared to other types of businesses,[3] hotels play a critical role in sex trafficking ventures and serve as "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers." *City of L.A. v. Patel*, 135 S. Ct. 2443, 2457 (2015) (Scalia, J., dissenting, joined by Chief Justice Roberts and Justice Thomas).

---

[3] *Cf. Sun Tr. Banks, Inc. v. Killebrew*, 266 Ga. 109, 111 (1995) (Sears, J., concurring) ("[T]he banking industry itself anticipates that criminal activity will frequently occur at ATMs."); *Killebrew v. Sun Trust Banks*, 221 Ga. App. 679, 680-81 (1996) (physical precedent only) ("it would be difficult to say that a criminal occurrence at an ATM is unforeseeable as a matter of law. Indeed, such a conclusion could be reached only by turning 'foreseeability' into a legal term of art totally divorced from its meaning in everyday usage.")

16

53.

Defendant knew or should have known that, without a venue, or crime scene, a sex trafficking venture ceases to exist.

54.

At all relevant times, Defendant knew or should have known that there was a heightened risk that sex trafficking could take place at its facility as compared to taking place at other locations because of: (i) extensive private sector / non-profit publications informing the public that motels were a hotbed of sex trafficking, (ii) extensive federal / state / local government testimony and press quotations informing the public that Macon area motels were a particular hotbed of sex trafficking, and (iii) the general nature of Defendant's business involving renting private rooms cheaply by the day with each room having a bed where trafficking could occur.

**B.     The Online Reviews**

55.

Defendant had actual or constructive knowledge of the publicly available online reviews of the Super 8 reporting allegations of prostitution and other illicit activities occurring at Defendant's Super 8. Those Google reviews include comments such as:

a. "If I could I would give it a negative stars county. Disgusting!!! . . . Prostitutes everywhere . . ."

b. " I was there a week ago this hotel is no place to go [un]less you selling drugs[.] I will never bring myself to no place like that again."

c. " . . . The hotel always smells like marijuana . . . Do not stay here if you have children, there's a lot of illegal activity going on at this hotel, the managers know this and do nothing about it . . ."

56.

The reviews quoted in this Complaint, amongst others, will be produced in discovery.

57.

The online reviews provided Defendant with actual or constructive knowledge of sex trafficking, commercial sex, and the foreseeable risk of future sex trafficking ventures at the Super 8.

**DEFENDANT HAD CONSTRUCTIVE KNOWLEDGE THAT M.H. WAS BEING TRAFFICKED**

58.

Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at the Super 8 at all relevant times giving Defendant knowledge of sex trafficking, including the sex trafficking that victimized M.H., and other crimes at the hotel during the relevant

period.

59.

During the period she was trafficked at the Super 8, M.H. would go to the front desk of the hotel with her traffickers.

60.

Plaintiff's traffickers were friendly with Defendant's staff because they had previously rented rooms from the hotel.

61.

M.H. and her traffickers were assigned a room on the third floor by Defendant's staff because Defendant routinely assigned those engaged in sex trafficking and other illicit activity rooms on the third floor of the hotel.

62.

While M.H. was being trafficked in the rooms at Super 8, Hunter and Taylor would wait at the front of the hotel or would be loitering around the property with other pimps and traffickers.

63.

While being trafficked for sex in October 2016, Defendant had ample opportunity to observe the numerous, well-known, and visible signs of a minor sex trafficking victim that M.H. exhibited. These included, but were not limited to:

    a. M.H. was very young (15-years-old) and Hunter was much older (approximately 26 years old);

19

b.  M.H. was not wearing appropriate clothing for her age and was often wearing very little clothing or revealing clothing;

c.  M.H. was the age of someone who should be in school, but she was not in school and spent the days at the hotel;

d.  M.H. would often loiter in the parking lot of the hotel and could be seen associating with men much older than she was;

e.  M.H. had signs of physical injury;

f.  M.H. had signs of drug use; and

g.  There was heavy foot traffic to and from the room where M.H. was being sold for sex to numerous adult men each day.

### 64.

When hotel housekeeping staff would come to the rooms where M.H. was being trafficked, Hunter and Taylor would refuse housekeeping's services when they asked to clean the room and instead, asked for exorbitant amounts of towels.

### 65.

M.H.'s victimization followed a pattern that was readily observable and should have been obvious to hotel employees based on information available to the public at large and to the hotel industry, and consequently, Defendant and its employees and agents had constructive knowledge of M.H.'s sex trafficking.

66.

Rather than taking reasonable steps to prevent sex trafficking, Defendant – in the quest for profits – created and maintained business models that attract, facilitate, and encourage the commercial sex market by providing a private and anonymous venue for traffickers and buyers alike.

67.

M.H.'s sex trafficking at the Super 8 was a foreseeable and preventable result of Defendant failing to implement reasonable, appropriate, and adequate measures to deter sex trafficking at its hotel and failing to prevent M.H.'s continued victimization by ignoring her obvious, well-known signs and indicators of sex trafficking.

## COUNT 1: TVPRA CIVIL BENEFICIARY CLAIMS

68.

The TVPRA, 18 U.S.C. § 1595(a), provides a civil cause of action to victims like M.H. against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in" minor sex trafficking or forced labor sex trafficking.

69.

Defendant "knowingly benefited" from M.H.'s trafficking because:

    a. M.H.'s traffickers rented rooms at Defendant's Super 8;

b. M.H.'s traffickers used Defendant's WiFi network at the Super 8;

c. M.H. was advertised for sex through the WiFi network and forced to have sex in the rooms; and

d. Defendant collected revenue from the room rentals and the use of the WiFi network.

70.

Defendant took part in a common undertaking involving risk or profit with the traffickers because:

a. Plaintiff's traffickers would pay in cash for one night at a time, booking the next night's stay before check-out time;

b. Defendant directly rented rooms to people it knew or should have known were engaged in sex trafficking including the trafficking of Plaintiff;

c. Defendant was directly renting rooms to the same traffickers – Plaintiff's traffickers;

d. Defendant had commercial dealings with Plaintiff's traffickers and then continued to rent rooms to Plaintiff's traffickers;

e. Defendant had a continuous business relationship with Plaintiff's traffickers such that Defendant established a pattern of conduct with those traffickers;

f. After renting the room for the first night, Plaintiff's traffickers had prior commercial dealings with Defendant and then reinstated those dealings;

g. Defendant associated with Plaintiff's traffickers in an effort to force Plaintiff to serve Defendant's business objectives; and

h. Defendant owned, operated, and maintained the hotel in question.

71.

Plaintiff's traffickers' undertaking with Defendant violated the TVPRA with respect to Plaintiff because:

a. the traffickers recruited Plaintiff to participate in commercial sex acts at Defendant's hotel by, among other reasons, stating that they would take care of the Plaintiff and then making Plaintiff work as prostitute;

b. the traffickers harbored Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the property;

c. the traffickers transported Plaintiff to Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

d. the traffickers maintained Plaintiff at Defendant's hotel for the purpose of Plaintiff participating in commercial sex acts at the hotel;

e. The commercial sex acts occurred at Defendant's hotel in rooms rented by Plaintiff's traffickers;

f. the traffickers used force, threats of force, fraud, and coercion to cause Plaintiff to participate in commercial sex acts at Defendant's hotel;

g. the traffickers threatened Plaintiff with violence and used this tactic to cause Plaintiff to engage in commercial sex acts at Defendant's hotel;

h. the traffickers de-frauded Plaintiff by falsely telling Plaintiff that they would take care of Plaintiff, and then forcing Plaintiff to work as prostitute for them at Defendant's hotel;

i. the traffickers coerced Plaintiff to participate in commercial sex acts at Defendant's property by threatening Plaintiff with physical harm

23

if Plaintiff did not engage in commercial sex acts at Defendant's hotel;

j.  the traffickers knowingly, recruited, enticed, harbored, transported, advertised, maintained, and solicited Plaintiff to engage in commercial sex acts in the hotel rooms that the traffickers rented from Defendant;

k.  Buyers came to Defendant's hotel, purchased the "right" to have sex with Plaintiff from her traffickers, and then the buyers raped the Plaintiff at Defendant's hotel;

l.  Hunter and Taylor were aware or should have been aware that M.H. was not yet eighteen years of age but nevertheless sold her for commercial sex at Defendant's hotel;

m. the traffickers utilized Defendant's wireless internet connection to post advertisements of Plaintiff for the commercial sex acts; and

n.  Other actions to be proven at trial.

72.

The venture in which Defendant participated affected interstate commerce for numerous reasons including the sale and use of condoms, the purchase and use of cleaning supplies from out of state, the use of credit cards to post online advertisements through websites for selling Plaintiff in commercial sex acts, the use of the internet to post sex advertisements, the use of interstate highways to transport Plaintiff to the hotel by their traffickers (and their associates), and other reasons to be proven at trial.

73.

As shown above, Defendant had – at minimum – constructive knowledge that Plaintiff was being trafficked for sex at the property. *See also* Fed. R. Civ. P. 9(b)("knowledge and other conditions of a person's mind may be alleged generally); *Sun Life Assurance Co. of Can. v. Imperial Premium Fin.*, *LLC*, 904 F.3d 1198, 1215 (11th Cir. 2018) (same).

74.

Defendant directed, operated, supervised, monitored, managed, and/or employed all employees, managers, housekeepers, and other staff at its hotel at all relevant times, giving Defendant specific and direct knowledge of sex trafficking, including the sex trafficking that victimized Plaintiffs, and other crimes at the hotel during the relevant period.

**CAUSATION AND DAMAGES**

75.

As a direct and proximate result of Defendant's acts and omissions Plaintiff suffered substantial physical, emotional, and psychological harm and other damages.

76.

Defendant is joint and severally liable with Plaintiff's traffickers, and their associates, and any other non-party actors who participated in the trafficking for the indivisible injuries that the venture proximately caused to Plaintiff.

77.

Defendant is liable for Plaintiff's damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

78.

Plaintiff brings each and every claim for damages permissible under the law against Defendant for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, and all compensatory, special, actual, general, and punitive damages permissible under the law, including, but not limited to:

a. Personal injuries;

b. Past, present and future pain and suffering;

c. Disability;

d. Disfigurement;

e. Mental anguish;

f. Loss of the capacity for the enjoyment of life;

g. Loss of earning capacity;

h. Lost wages;

i. Diminished capacity to labor;

j. Incidental expenses;

k.   Past, present and future medical expenses;

l.   Permanent injuries;

m.   Attorney's fees;

n.   Punitive damages; and

o.   Consequential damages to be proven at trial.

79.

Punitive damages should be imposed upon the Defendant without limitation or cap for its actions which are explained more fully above.

80.

Defendant is also liable for paying Plaintiff's attorneys fees and litigation expenses pursuant to the TVPRA because Defendant has acted in bad faith in the underlying transaction as shown herein.

81.

Each of the forgoing acts and omissions constitute an independent act of negligence on the part of Defendant, and one or more or all of the above stated acts were the proximate causes of the injuries and damages sustained by the Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment against Defendant and for the following:

1)     That process and summons issue requiring Defendant to appear as provided by law to answer the allegations of the Complaint;

2)     Plaintiff be awarded actual damages in amounts to be shown at trial;

3)     Plaintiff be awarded all general, special, compensatory, economic, and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendant;

4)     Plaintiff be awarded her attorneys' fees and case expenses as allowed by law;

6)     Punitive damages be imposed upon Defendant;

7)     Plaintiff be provided with a trial by jury; and

8)     Plaintiff have such other relief as this Court deems just and appropriate under the circumstances.

This 19th day of March, 2026.

**THE STODDARD FIRM**

*/s/ Matthew B. Stoddard*
Matthew B. Stoddard, Esq.
Georgia Bar No. 558215
THE STODDARD FIRM
1534 N Decatur Road
P: 470-467-2200
F: 470-467-1300
matt@LegalHelpGa.com
***Attorneys for Plaintiff***

28